IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUANITA REDFERN
and MICHAEL PICKETT,

Appellants,

v.

LAURA J. WILLIAMS,

Appellee.

BK 04-35209
No. 07-0714-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Procedural Background

Creditors Juanita Redfern and Michael Pickett appeal two orders entered by the Bankruptcy Court. Based on the record and the following, the Court affirms the Bankruptcy Court.

To say the least, this bankruptcy case and the underlying suit between Michael Pickett, Juanita Redfern and Laura Williams has been a long and contentious matter.[1] On December 30, 2004, Laura Williams filed bankruptcy

---

[1] The underlying suit, filed in the Madison County, Illinois Circuit Court, was a claim for breach of contract alleging that Thomas and Laura Williams breached a contract they entered with Pickett and Redfern for the sale of Pickett and Redfern's real property located at 130 Emerald Way East, Granite City, Illinos. The underlying suit also contained a claim of tortious interference with contract against Royce Realty, Inc., d/ba/ Century 21 Royce Realty, Inc., and Diana Naney. *See Pickett v. Williams*, **02-L-980**. A judgment for $113,500 was entered against Williams and her

pursuant to Chapter 13. In March of 2005, Pickett and Redfern, creditors of Williams, filed an adversary proceeding. Thereafter, Williams' bankruptcy case was converted to a Chapter 7 proceeding in June 2005; in September 2005, the U.S. Trustee filed an adversary proceeding and on November 30, 2005, Williams' bankruptcy proceeding was converted back to a Chapter 13 proceeding.

On August 18, 2006, United States Bankruptcy Judge Pamela Pepper, entered what purported to be an Agreed Order. The Agreed Order provides in part:

> **IT IS ORDERED** that debtor is granted leave to continue the State Court litigation in the appeal of the judgment entered against debtor, et al, in favor of Michael Pickett and Juanita Redfern pending in the Appellate Court of Illinois, Fifth District, Case No. 5-04-0598, conditioned upon debtor, Laura Williams, granting to Michael Pickett and Juanita Redfern as an appeal bond a recordable 3rd mortgage in the amount of the State Court judgment on her residence located at 131 Emerald Way East, Granite City, Illinois, said 3rd mortgage to include a collateral assignment of beneficial interest in any land trust holding title to said real estate which will be inferior to the current 1st and 2nd mortgages on said real estate.
> ...
> **IT IS FURTHER ORDERED** that creditors Michael Pickett and Juanita Redfern withdraw their objection to debtor's plan based on an alleged bad faith filing, but reserve the right to object to debtor's amended plan on other grounds.

This Order also resolved a motion for sanctions and fees and costs by granting

---

late husband, Naney and Royce Realty, Inc., in favor of Redfern and Pickett. Thereafter, those defendants appealed the state court judgment. However, once Williams filed for bankruptcy, the state appellate court stayed her appeal, but allowed the appeal to proceed as to the other defendants. The state appellate court reversed the state court judgment against the other defendants and remanded the case for a new trial. **See Pickett, v. Williams, 5-04-0598**. In the meantime a declaratory judgment suit arising out of the underlying suit was filed by an insurance carrier in this District Court. **See General Ins. Co. of America v. Royce Realty, Inc., 04-0599-WDS**.

Redfern and Pickett's counsel an administrative expense in the amount of $2,000. Also, on August 18, 2006, Williams filed a fourth amended plan, which was confirmed by the bankruptcy court without objection on September 8, 2006.

On November 26, 2006, the Chapter 13 trustee filed a motion for status conference regarding the state court appeal, as the trustee was prepared to make distribution but could not do so until the status of the state court appeal was determined. Counsel for Redfern and Pickett filed a response to the status. On January 18, 2007, a status hearing was held, however, counsel for Redfern and Pickett did not attend. At the status hearing, Williams agreed to amend her plan to allow distributions to Redfern and Pickett prior to the state court appeal being decided.

Thereafter, the Bankruptcy Court entered an Order on July 27, 2007 titled: "ORDER DENYING MOTION FOR CONTEMPT, LIFTING STAY AND REQUIRING DEBTOR TO EITHER POST MORTGAGE OR TO SEEK DISMISSAL OF STATE COURT APPEAL." That Order states in part:

> The parties came before this Court on May 17, 2007 on Pickett and Redfern's motion to compel the debtor to provide the 3rd mortgage. On that date, the Court granted the motion to compel, and ordered the debtor to submit the 3rd mortgage within 30 days. (The Court also overruled Pickett and Redfern's objection to the debtor's fifth amended plan.)
> …
> In looking at the language of the August 18, 2006 order, the Court finds Pickett and Redfern's interpretation of the language compelling. The order does, in fact, state that the debtor is granted "leave" to continue her appeal- which she has done for quite some time- in exchange for the provision of the mortgage. Under this language, then, the debtor should have provided the recordable third mortgage in

August of 2006. She has never provided that mortgage. Thus, she has failed to abide by both the terms of the August 18, 2006 order and the terms of this Court's oral order on May 17, 2007.

The Court declines, however, to hold the debtor in contempt for this failure. It is clear from the hearing on July 26, 2007 that the debtor was following advice from counsel in refusing to turn over the mortgage, and that her counsel was providing her with his interpretation of the August 18 order. While the Court does not agree with counsel's interpretation, it cannot find that the debtor's actions in following her counsel's advice constitute knowing and wilful contempt.
...
That the debtor must, within ten (10) days of the date of this Order, either move to dismiss, in its entirety, case no. 5-04-0598 currently pending in the Appellate Court of Illinois, Fifth District, or tender to Michael Pickett and Juanita Redfern a recordable 3rd mortgage on her residence at 131 Emerald Way East, Granite City, Illinois. The debtor's motion in state court must seek to dismiss both her personal appeal *and* the appeal she pursues as administrator of her deceased husband's estate.

On August 7, 2007, Judge Pepper entered another Order titled "ORDER GRANTING MOTIONS TO RECONSIDER AND MODIFYING JULY 27, 2007 ORDER DENYING MOTION FOR CONTEMPT, LIFTING STAY AND REQUIRING DEBTOR EITHER TO POST MORTGAGE OR TO SEEK DISMISSAL OF THE STATE COURT APPEAL."

That Order provides in part:

But it now seems clear that whatever the August 18, 2006 order was, it was not "agreed." The parties do not appear to have had a meeting of the minds with regard to the terms of that order. The various hearings that have taken place since August 18, 2006 frustrate the purpose of an "agreed" order- that is, to avoid future litigation. The Court cannot return the parties to the state they inhabited on August 17, 2006. What it can do is stop the bickering over the August 18, 2006 order.
WHEREFORE, the Court hereby orders the following:
1.) The Court hereby VACATES the "agreed" order of August 18, 2006, as well as any subsequent orders enforcing that order;
2.) The Court notes that vacating the August 18, 2006 order LIFTS the

stay prohibiting the creditors from conducting further discovery in the state court matter. The creditors are free, as of the date of this order, to pursue further discovery in the state court appeal;
3.) The Court notes that vacating the August 18, 2006 order STAYS the debtor from taking any further action in the state court appeal;
4.) The Court will contact the parties to schedule a date to hear the debtor's June 16, 2006 "Motion for Leave to Continue State Court Litigation.

On August 31, 2007, Judge Pepper held a telephone hearing, which included the Chapter 13 trustee who reported that Williams had completed payments on her plan. Then on September 4, 2007, Judge Pepper entered another Order. This Order is titled "ORDER GRANTING CREDITORS' MOTION TO RECONSIDER, DENYING THE CREDITORS' MOTION TO ORDER THE DEBTOR TO PROVIDE THEM WITH A RECORDABLE THIRD MORTGAGE ON THE DEBTOR'S RESIDENCE, DENYING THE CREDITORS' MOTION TO VACATE EVERY ORDER ENTERED IN THIS CASE SINCE AUGUST 18, 2006, AND GRANTING THE DEBTOR'S MOTION TO CONTINUE THE STATE COURT LITIGATION." This Order states in part:

> *With regard to the creditors' motion asking the Court to order the debtor to post a recordable third mortgage on her residence*: the motion is **DENIED**. The Court notes, for the record, that based on the understanding it has now obtained regarding the legal effect and purpose of an "appeal bond" under Illinois law, it agrees with the creditors that debtors should have, immediately after the Court issued the August 18, 2006 agreed order, posted the recordable third mortgage on her residence. Despite agreeing with the creditors on this point, however, the Court does not now order the debtor to do what she should have done over a year ago because of the current state of the debtor's bankruptcy case. According to the Chapter 13 trustee, the debtor has fulfilled her obligations under her Chapter 13 plan. In other words, she has completed the required payments during the

> required commitment period.  There has been no determination that the pre-petition debt the debtor owed these creditors was non-dischargeable.  Under applicable bankruptcy law, then, the debtor no longer owes a pre-petition debt to these creditors.  As a result, this Court does not believe that is has the authority to order her to provide further "payment" to these creditors in the form of a recordable third mortgage.
> ...
> Assuming for the sake of argument that the creditors are correct, any such contractual obligations created a new, post bankruptcy petition debt.  As such, this Court does not have jurisdiction over disputes involving that new debt, because the new debt post-dates the bankruptcy proceedings in the above-captioned matter.  Accordingly, if the creditors wish to pursue any rights they believe they may have regarding the debtor's alleged breach of contract, they must do so in another forum.

On September 5, 2007, the Chapter 13 trustee filed his Report of Completion of Plan and Request to terminate Wage Order and for Entry of Discharge; to which Redfern and Pickett objected.  The Order of Discharge was filed on November 15, 2007.

On September 10, 2007, Appellants filed their Notice of Appeal appealing Judge Pepper's August 7, 2007 and September 4, 2007 Orders.  Appellants appeal the August 7, 2007 Order to the extent that it vacates the August 18, 2006 Agreed Order of the Bankruptcy Court, as well as any subsequent orders enforcing the August 18, 2006 Agreed Order; and Appellants appeal the September 4, 2007 Order to the extent that it (a) denies Creditors' request to Order Debtor to provide a Recordable Third Mortgage on Debtor's property, and (b) denies Creditors' alternative request to vacate every Order entered in the Bankruptcy Court after August 18, 2006.

## II. Legal Standard

Pursuant to 28 U.S.C. § 158, a federal district court has jurisdiction to hear appeals from the rulings of the bankruptcy court. On an appeal, a district court "may affirm, modify or reverse a bankruptcy court's judgment, order or decree, or remand with instructions for further proceedings. **Fed.R.Bankr.P. 8013;** *see also In re Tolona Pizza Prods. Corp.*, **3 F.3d 1029, 1033 (7th Cir. 1993)**. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." **Fed.R.Bnkr.P. 8013.** Accordingly, the Court reviews the Bankruptcy Court's findings of fact for clear error and reviews its conclusions of law *de novo*. *In re ABC-Naco, Inc.*, **483 F.3d 470, 472 (7th Cir. 2007)**. The Court reviews mixed questions of fact and law de novo. *Mungo v. Taylor*, **355 F.3d 969, 974 (7th Cir. 2004)**.

## III. Analysis

Here, Redfern and Pickett contend that the Bankruptcy Judge erred when it "found that it had no jurisdiction to enforce an agreed order actually entered by that court, which resolved several controversies that were actually before that Court." Specifically, Redfern and Pickett contend that despite the fact that they upheld their end of the bargain; that the Bankruptcy Court found that Williams should have posted the recordable third mortgage and that Williams failed to do so, the Bankruptcy Court erred in finding that it did not have jurisdiction to require

Williams to do so. Williams counters that because Williams' debt to Redfern and Pickett did not fall under the exceptions under 11 U.S.C. § 1328, she was entitled to discharge of the debt and that the Bankruptcy Court no longer had authority to order additional payment to creditors. The Court finds Williams' argument persuasive.

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Authority granted under § 105(a) of the Code that permits courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code may only be exercised "within the confines of the Bankruptcy Code." ***See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 198(1988)**. A bankruptcy court may not use "its equitable powers to circumvent the law." ***See In re Greenig,* 152 F.3d 631, 635 (7th Cir. 1998) (citing *Carlson v. United States,* 126 F.3d 915, 920 (7th Cir. 1997))**. Nor does a bankruptcy court "have free-floating discretion,' to create rights outside the Code.**"** *In re Lloyd,* **37 F.3d 271, 275 (7th Cir. 1994).** *See also In re Kmart,* **359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than to override.");** *In re Fesco Plastics Corp.,* **996 F.2d 152, 154-55 (7th Cir. 1993) ("[W]hen a specific Code section addresses an issue, a court may not**

**employ its equitable powers to achieve a result not contemplated by the Code."**).

Here, the Court finds that Judge Pepper's Orders were appropriate to facilitate the objectives of the Bankruptcy Code. Williams had completed all her plan payments as reported by the Chapter 13 trustee and was eligible for discharge. During a January 18, 2007 status hearing, in which neither Appellants nor their counsel attended, Williams agreed to change her position by amending her bankruptcy plan to allow a distribution to Redfern and Pickett on a judgment which she believed should have been reversed. She amended her plan, made her plan payments and Redfern and Pickett received distributions. Clearly, under 11 U.S.C. § 1328, the debt to Redfern and Pickett did not fall under any of these exceptions.[2] Judge Pepper correctly found that there had been no determination that the pre-petition debt to Redfern and Pickett was non-dischargeable and, thus, there was no pre-petition debt owed to Redfern and Pickett. Judge Pepper also found that the

---

[2] In order to determine which what types of debt are non-dischargeable under Chapter 13, one must look to 11 U.S.C. § 1328(a), which provides four exceptions to dischargeability of a debt. 11 U.S.C. § 1328 provides in part: (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
(1) provided for under section 1322(b)(5);
(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

August 17, 2006 Order was not an "agreed" order as it was supposed to be based on the circumstances of the case. Finding otherwise would have thwarted the objectives of the bankruptcy provisions and made the proceedings meaningless.

Furthermore, as to Judge Pepper's alternative finding that "any such contractual obligations created a new, post bankruptcy petition debt. As such, this Court does not have jurisdiction over disputes involving that new debt, because the new debt post-dates the bankruptcy proceedings in the above-captioned matter . . . .," the Court also concludes that this finding was not in error. The mere fact that the parties in dispute engaged in pre-petition business relations does not in and of itself confer jurisdiction on the Bankruptcy Court. Because the dispute does not involve pre-petition assets, pre-petition liabilities, discharged obligations or otherwise involve a matter "related" to the bankruptcy proceedings, the bankruptcy court is without jurisdiction. **See In the Matter of FedPak Systems, Inc., 80 F.3d 207, 213-14 (7th Cir. 1996)("[a] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" …[w]e have interpreted 'related to' jurisdiction narrowly "out of respect for Article III … as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by state courts." Home Ins. Co. v. Cooper & Cooper, Ltd., 889 F.2d 746, 749 (7th Cir.1989); see also In re Kubly, 818 F.2d 643, 645 (7th Cir.1987) (the "limited jurisdiction" of the bankruptcy court "may not be enlarged by the judiciary**

**because the judge believes it wise to resolve the dispute."). Additionally, we believe that common sense cautions against an open-ended interpretation of "related to" statutory language "in a universe where everything is related to everything else." Gerald T. Dunne, <u>The Bottomless Pit of Bankruptcy Jurisdiction</u>, 112 Banking L.J. 957 (Nov.-Dec.1995))**. Based upon the facts and allegations, any obligation regarding this purported "agreed" Order is a post-petition obligation. The Bankruptcy Court's jurisdiction does not attach to every action affecting a debtor post-petition, but only to those which involve both pre-petition liabilities and assets. The Bankruptcy Court's limited subject matter jurisdiction does not encompass assets outside the bankruptcy estate or post-petition obligations.

## IV. Conclusion

Accordingly, the Court **AFFIRMS** the decision of the Bankruptcy Court.

**IT SO ORDERED.**

Signed this 19th day of September, 2008.

/s/ *David R Herndon*
**Chief Judge
United States District Court**